UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:18-CV-00175-HBB

VICKIE LYNN DAUGHERTY                                             PLAINTIFF

VS.

ANDREW SAUL, COMMISSIONER
SOCIAL SECURITY ADMINISTRATION[1]                                 DEFENDANT

## MEMORANDUM OPINION AND ORDER

### BACKGROUND

Before the Court is the complaint (DN 1) of Vickie Lynn Daugherty ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both the Plaintiff (DN 12) and Defendant (DN 13) have filed a Fact and Law Summary. For the reasons that follow, the final decision of the Commissioner is **AFFIRMED**, and judgment is **GRANTED** for the Commissioner.

Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 10). By Order entered March

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed.R.Civ.P. 25(d). *See also* Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

1

5, 2019 (DN 11), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

## FINDINGS OF FACT

On January 12, 2016, Plaintiff protectively filed an application for Disability Insurance Benefits (Tr. 21, 211-17). Plaintiff alleged that she became disabled on May 1, 2011, as a result of thrombotic thrombocytopenic purpura (TTP), visual impairment, and high blood pressure (Tr. 21, 232). On January 24, 2018, Administrative Law Judge Maribeth McMahon ("ALJ") conducted a video hearing from Paducah, Kentucky (Tr. 21, 33-82). Plaintiff and her attorney, Steven Wilson, participated from Owensboro, Kentucky (Id.). Kenneth Boaz, an impartial vocational expert, also testified during the hearing (Id.).

In a decision dated June 11, 2018, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 21-28). The ALJ determined that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2015 (Tr. 23). At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since May 1, 2011, through her date last insured (Id.). At the second step, the ALJ determined that Plaintiff has the following severe impairments: blurred vision; history of TTP; and history of migraine headaches (Id.). The ALJ also found that Plaintiff's high blood pressure, back problems, and anxiety are non-severe impairments (Id.).

At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 23). The ALJ indicated that she specifically considered Listings 1.00, 2.00, 4.00,

2

11.00, 12.00, and 14.00 and concluded the medical evidence failed to demonstrate a listing level of severity with respect to any listed impairment on a sustained basis (Id.).

At the fourth step, the ALJ found through the date last insured, Plaintiff had the residual functional capacity (RFC) to perform medium work as defined in 20 C.F.R. 404.1567(c) subject to the following: no exposure to unprotected heights, dangerous machinery, or vibration; no balancing; no driving; she would have been able to read only normal print with glasses; and she did not have the depth perception or the required peripheral vision to be able to judge distance (Tr. 24). Relying on testimony from the vocational expert, the ALJ found that Plaintiff was unable to perform any past relevant work through the date last insured (Tr. 26).

The ALJ proceeded to the fifth step where he considered Plaintiff's RFC, age, education, and past work experience as well as testimony from the vocational expert (Tr. 27-28). The ALJ found through the date last insured Plaintiff could have performed a significant number of jobs that exist in the national economy (Id.). Therefore, the ALJ concluded that Plaintiff was not been under a "disability," as defined in the Social Security Act, at any time from her alleged onset date of May 1, 2011, through her date last insured of December 31, 2015 (Tr. 28).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 208-10). The Appeals Council denied Plaintiff's request for review (Tr. 1-3).

## CONCLUSIONS OF LAW

### Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d

680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-3). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the decision of the ALJ, not the Appeals Council, and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which

4

can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the RFC to return to his or her past relevant work?

5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step.

Plaintiff's Challenge to Finding No. 4

Plaintiff argues the ALJ should have found she meets Listing 2.03A (DN 12 PageID # 1120-21). But Plaintiff relies exclusively on comments set forth in a July 18, 2018 treatment note from Dr. Jonathan L. Shrewsbury, a treating optometrist (Id. citing Tr. 14).[2]

The July 18, 2018 treatment note is not a part of the administrative record that the ALJ considered when she issued her decision on June 11, 2018. Instead, Plaintiff submitted this treatment note in support of her request for the Appeals Council to review the ALJ's decision (*see* Tr. 2, 12-17). The Appeals Council considered this treatment note[3] but declined Plaintiff's request for review (Tr. 1-3). The Appeals Council explained the treatment note did not relate to whether Plaintiff was disabled on or before December 31, 2015 (Tr. 2).

Plaintiff apparently reasons since the Appeals Council considered this new evidence but declined her request for review (Tr. 1-3), it must be part of the record that the Court can consider in determining whether the final decision of the Commissioner is supported by substantial evidence. Plaintiff's belief, however, is contra to well-established case law in the Sixth Circuit. When the Appeals Council considers new evidence, but declines review, the district court cannot consider the new evidence in deciding whether to uphold, modify, or reverse the final decision of the Commissioner. Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993). This approach makes sense because the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied

---

[2] Plaintiff indicates the treatment note is at Tr. 19 (DN 12 PageID # 1120). The treatment note is actually located at Tr. 12-17 (bottom right corner of transcript page) in the administrative record.
[3] The Appeals Council mistakenly indicated the treatment note is dated July 18, 2017 (*compare* Tr. 2 with Tr. 12).

Plaintiff's request for review. See 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline, 96 F.3d at 148; Cotton, 2 F.3d at 695-696. Thus, Plaintiff's challenge to Finding No. 4 fails because the Court cannot consider July 18, 2018 treatment note from Dr. Shrewsbury in deciding whether to uphold, modify, or reverse the final decision of the Commissioner. Additionally, the Court has reviewed the record and concludes that Finding No. 4 is supported by substantial evidence in the record.

Plaintiff's Challenges to Finding No. 5

The ALJ's assessment of Plaintiff's RFC is set forth in Finding No. 5. The RFC is the ALJ's ultimate determination of what Plaintiff can still do despite her physical and mental limitations. See 20 C.F.R. §§ 404.1545(a), 404.1546. The ALJ makes this assessment based on her consideration of medical source statements and all other evidence in the case record. See 20 C.F.R. §§ 404.1529, 404.1545(a), 404.1546. Thus, in making the RFC pronouncement the ALJ must necessarily assign weight to the medical source statements in the record and assess Plaintiff's subjective allegations. See 20 C.F.R. §§ 404.1527(c), 404.1529.

Plaintiff raises the following challenges to the ALJ's assessment of her RFC: 1) the ALJ misconstrued the evidence of record and therefore wrongly determined that Plaintiff's vision impairment is not as serious as alleged; 2) the ALJ failed to properly provide support for the RFC assigned to Plaintiff; and 3) the ALJ wrongly inferred that Plaintiff's performance of a random variety of activities is evidence of Plaintiff's ability to perform substantial gainful activity (DN 12 PageID # 1115, 1118-21, 1123-24).

1       Plaintiff's First Challenge to the RFC

Plaintiff argues the ALJ misconstrued the evidence of record, and therefore wrongly determined that Plaintiff's vision impairment is not as serious as alleged (DN 12 PageID # 1118-21). Plaintiff accuses the ALJ of conflating stabilization of the TTP[4] after 20 plasma exchanges with the permanent impairment this illness caused to her vision (Id.). But Plaintiff relies primarily on comments set forth in a July 18, 2018 treatment note from Dr. Shrewsbury, a treating optometrist (Id. citing Tr. 14). As explained above, the Appeals Council considered this new evidence, but declined review (Tr. 1-3). Therefore, the Court cannot consider this new evidence when deciding whether to uphold, modify, or reverse the final decision of the Commissioner. Cline, 96 F.3d at 148; Cotton, 2 F.3d at 695-696.

---

4  According to the National Institute of Health:

> Thrombotic thrombocytopenic purpura (TTP) is a rare blood disorder. In TTP, blood clots form in small blood vessels throughout the body.
> The clots can limit or block the flow of oxygen-rich blood to the body's organs, such as the brain, kidneys, and heart. As a result, serious health problems can develop.
> The increased clotting that occurs in TTP also uses up platelets (PLATE-lets) in the blood. Platelets are blood cell fragments that help form blood clots. These cell fragments stick together to seal small cuts and breaks on blood vessel walls and stop bleeding.
> . . .
> "Thrombotic" (throm-BOT-ik) refers to the blood clots that form. "Thrombocytopenic" (throm-bo-cy-toe-PEE-nick) means the blood has a lower than normal number of platelets. "Purpura" (PURR-purr-ah) refers to purple bruises caused by bleeding under the skin.
> . . .
> A lack of activity in the ADAMTS13 enzyme (a type of protein in the blood) causes TTP. . . .
> . . .
> Treatments for TTP include infusions of fresh frozen plasma and plasma exchange, also called plasmapheresis (PLAZ-ma-feh-RE-sis). . . .

https://www.nhlbi.nih.gov/health-topics/thrombotic-thrombocytopenic-purpura

The remainder of what Plaintiff relies on are excerpts from treatment notes the ALJ considered when making findings regarding the impact TPP had on Plaintiff's vision (*compare* DN 12 PageID # 1118-21 with Tr. 25-26)[5]. The ALJ acknowledged Plaintiff's complaints as well as findings by the treating sources concerning her vision (Tr. 25-26, citing Tr. 982-1000, 1001-11, 1012-24). The ALJ also noted that visual acuity testing on March 31, 2015 revealed 10/400 on the right and 20/400 on the left, on May 12, 2015 it revealed 20/50 on the right and 20/100 on the left, on September 24, 2015 it revealed 20/60 bilaterally, and on May 3, 2017 it revealed 20/70 on the right and 20/60 on the left (Tr. 25 citing Tr. 985, 986, 1003-04, 1012, 1014-15, 1018, 1020-21). Further, the ALJ recognized that Dr. Patel with Cincinnati Eye Institute indicated in a May 3, 2017 treatment note that Plaintiff's visual field deficit did not appear progressive (Tr. 1006). The relevant portion of the ALJ's RFC indicates Plaintiff "would have been able to read only normal print with glasses" and she "did not have depth perception or the required peripheral vision to be able to judge distance" (Tr. 24-25). These findings are supported by substantial evidence in the record and comport with applicable law.

2.  Plaintiff's Second Challenge to the RFC

Next, Plaintiff claims the ALJ failed to properly provide support for the RFC assigned to Plaintiff (DN 12 PageID # 1121). Plaintiff asserts that the ALJ failed to discuss how the evidence supports the determination that Plaintiff can perform medium work (Id.).

---

5 Plaintiff indicates the relevant pages in the ALJ's decision are Tr. 51-52 (DN 12 PageID # 1118-20). The relevant pages in the ALJ's decision are at Tr. 25-26 (bottom right corner of transcript page) or DN 9-2 PageID # 51-52 (top of transcript page).

At the second step, the ALJ discussed the evidence regarding Plaintiff's purported back problems and concluded it was not a severe impairment (Tr. 23-24). The ALJ also noted two non-examining State Agency medical consultants, Drs. Back and Irlandez, had opined that Plaintiff was restricted to a range of medium work because of mild back issues (Tr. 24). The ALJ indicated their determination was "not entirely unreasonable" given the results of a March 2015 physical examination and x-ray imaging revealing the presence of upper thoracic levoscoliosis (Tr. 24 citing Tr. 899, 1067). The ALJ indicated she afforded great weight to the assessments of Drs. Back and Irlandez (Tr. 24).

Additionally, in the context of assessing Plaintiff's RFC, the ALJ made these additional comments regarding Plaintiff's exertional limitations:

> In sum, the undersigned concludes that the claimant should have likely avoided the more strenuous requirements of heavy or very heavy work on a sustained basis. All the same, she would appear to have reasonably been capable of performing at least medium work within the parameters delineated in the above-stated residual functional capacity finding. This conclusion is not wholly out of proportion with and is based on the totality of the substantial evidence of record previously discussed and referenced in the instant decision.

(Tr. 26). Thus, contrary to Plaintiff's assertion, the ALJ did discuss how the evidence supported the determination that plaintiff can perform a range of medium work. Further, the ALJ's findings are supported by substantial evidence in the record and comport with applicable law.

3. Plaintiff's Third Challenge to the RFC

Next, Plaintiff contends the ALJ wrongly inferred that Plaintiff's performance of a random variety of activities is evidence of Plaintiff's ability to perform substantial gainful activity (DN 12 PageID # 1123-24). Plaintiff is referring to the ALJ's observations such as "on July 24, 2012,

the claimant was noted to be flying out to California soon" and "on May 24, 2017, she was noted to have recently been working outside on a pool" (Id. citing Tr. 26, 882, 1066). Plaintiff asserts these two random activities do not mean she can perform substantial gainful activity (Id.).

Plaintiff's contention is based upon a misinterpretation of the ALJ's decision. The ALJ's observations were linked to Plaintiff's statements concerning the intensity, persistence, and limiting effects of her alleged symptoms (Tr. 25-26). The ALJ discussed the medical evidence pertaining to the underlying medical conditions to determine whether the objectively established medical conditions were of such severity that they could reasonably be expected to produce the allegedly disabling symptoms (Tr. 25-26). *See* Duncan v. Sec'y of Health & Human Servs., 801 F.2d 847, 853 (6th Cir. 1986). Having found the reported symptoms suggested impairments of greater severity than could be shown by the objective medical evidence, the ALJ appropriately considered other information and factors that may be relevant to the degree of symptoms alleged. *See* 20 C.F.R. § 404.1529(c)(3).

For example, after finding the medical evidence did not substantiate Plaintiff's allegations regarding the degree of limitation imposed by her vision impairment, the ALJ considered Plaintiff's level of daily activity in determining the extent to which her purported symptoms were of disabling severity (Tr. 25, 26). *See* 20 C.F.R. § 404.1529(c)(3). The ALJ also considered the extent to which there were conflicts between Plaintiff's statement and the rest of the evidence (Id.). *See* 20 C.F.R. § 404.1529(c)(4). Specifically, the ALJ commented:

> Further undermining the persuasiveness of the claimant's allegations of disability is the claimant's activity level. Indeed, the undersigned observes that the claimant appears to be someone who is more active than has otherwise generally been asserted in this case. For example, on July 24, 2002, the claimant was noted to be

> flying out to California soon. (Exhibit 2F/9). In addition, on May 24, 2017, she was noted to have recently been working outside on a pool. (Exhibit 8F/12). She also even indicated at the hearing that she was able to walk unassisted, sign a credit card receipt for purchases, and use a magnifier for reading.

(Tr. 25-26). The ALJ's assessment also addressed Plaintiff's allegations, the medical evidence, and other evidence in the record regarding her TPP, migraines, high blood pressure, back problems, and mental impairment (Tr. 23-24, 25-26). The ALJ concluded Plaintiff's statements regarding the intensity, persistence, and limiting effects of all her impairments were not entirely persuasive or consistent with the medical and other evidence in the record and, as such were afforded little weight (Tr. 23-26). In the absence of detailed corroborating evidence of Plaintiff's subjective complaints, it becomes the duty of the ALJ to resolve the issue of Plaintiff's credibility. Since tolerance of symptoms arising from impairments is a highly individualized matter, and a determination of disability based on those symptoms depends, of necessity, largely on the credibility of the claimant, the conclusion of the Administrative Law Judge, who has the opportunity to observe the claimant's demeanor, "should not be discharged lately." Houston v. Sec'y of Health & Human Servs., 736 F.2d 365, 367 (6th Cir. 1984) (citing Beavers v. Sec'y of Health, Educ. & Welfare, 577 F.2d 383 (6th Cir. 1978)). The undersigned concludes that the ALJ's findings regarding Plaintiff's credibility are supported by substantial evidence and fully comport with applicable law.

Plaintiff's Challenges to Finding No. 10

Plaintiff contends the jobs cited by the vocational expert do not conform to the limitations set forth in the ALJ's hypothetical question (DN 12 PageID # 1121-23). Plaintiff explains the dryer attendant (DOT No. 581.686-018), the scrap sorter (DOT No. 509.686-018), and the shredder

12

(DOT No. 929.687-022) jobs involve exposure to dangerous machinery which is expressly precluded by the ALJ's hypothetical question (DN 12 PageID # 1122-23). Additionally, Plaintiff contends the scrap sorter (DOT No. 509.686-018), and the shredder (DOT No. 929.687-022) jobs involve sorting small parts that would prove difficult for someone with the vision limitations in the ALJ's hypothetical question (Id.).

At the fifth step, the Commissioner has the burden of demonstrating a significant number of jobs exist in the local, regional and national economies that the claimant can perform, given his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and (g), 416.920(a)(4)(v) and (g); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 684 (6th Cir. 1992); Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990); Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980). When, a claimant's RFC does not coincide with all the criteria of a Grid Rule, the Commissioner is limited to using the Grid Rule as a framework in the decision-making process and must make a non-guideline determination based on the testimony of a vocational expert. 20 C.F.R. § 404.1566(e); Born v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1174 (6th Cir. 1990); Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987); Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 531, 535 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983).

Plaintiff's RFC included non-exertional limitations (See Finding No. 5 at Tr. 24-25). As a result, the ALJ limited her use of the Grid Rules to a framework for the decision-making process and made a non-guideline determination based on the testimony of a vocational expert (Tr. 27). The ALJ's question to the vocational expert indicated the hypothetical individual could perform medium work subject to the following restrictions:

> I would like the hypothetical individual to never be exposed to unprotected heights, dangerous machinery, or vibrations. No balancing. No driving. The hypothetical individual has limited visual acuity such that she is unable to read, let's say, even normal print with her glasses. No depth perception, no peripheral, no, no vision, no required peripheral vision to be able to judge distance. And, and, what did I say about looking at -- unable to read even normal print with glasses let's leave that with glasses, I think that's part of what it is.

(Tr. 62). In response to the ALJ's hypothetical question, the vocational expert confirmed that there are jobs in the national economy that an individual who can't read normal print with their glasses would be able to perform (Tr. 63). The vocational expert testified that one example would be a box bender, Dictionary of Occupational Titles (DOT) No. 641.687-010, medium, SVP of 1, unskilled, with 47,000 such jobs nationally (Id.). Another example would be a dryer attendant, DOT No. 581.686-018, medium, SVP of 1, unskilled, with 22,000 such jobs nationally (Id.). Another example would be a scrap sorter, DOT No. 929.687-022, medium, SVP of 2, unskilled, with 22,000 such jobs nationally (Id.). And another example would be a shredder, DOT No. 929.687-022, medium, SVP of two, unskilled, with 43,000 jobs in the national economy (Id.).

On cross-examination, Plaintiff's counsel asked if the shredder job would involve dangerous machinery (Tr. 64). The vocational expert responded:

> I will explain. It is a shredder, it's shredding paper and normally you would think that the way they're built now, pretty much you, the paper goes through and then it goes around where as you cannot get your fingers in there. And this is been for the past, quite a few years, actually. And the reason I, I did put that is because I know of two, actually, blind people that did these jobs.
> . . .
> And, so, they're very safe.

(Id.). Additionally, the vocational expert indicated "according to the DOT" these jobs do not require peripheral vision, near or far acuity, or depth perception (Tr. 65).

The record indicates the vocational expert considered all the restrictions in the ALJ's hypothetical question before identifying the four jobs. In fact, during cross-examination by Plaintiff's counsel, the vocational expert confirmed the paper shredder job did not involve exposure to dangerous machinery and would not prove difficult for someone with the visual limitations in the hypothetical question. Notably, Plaintiff's counsel had the opportunity but failed to develop, through cross-examination of the vocational expert, the record regarding the purported conflicts with the dryer attendant and scrap sorter jobs identified in the DOT. For this reason, Plaintiff has forfeited these parts of her claim. *See* Beinlich v. Comm'r of Soc. Sec., 345 F. App'x 163, 168-69 (6th Cir. 2009); Ledford v. Astrue, 311 F. App'x 746, 757 (6th Cir. 2008). In sum, Finding No. 10 is supported by substantial evidence in the record and comports with applicable law.

ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

**IT IS FURTHER ORDERED** that judgment is **GRANTED** for the Commissioner.

July 9, 2019

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

Copies: Counsel